Thank you, your honors, may it please the court. My name is Nika Shelton and I represent the petitioner in this case. I'm going to make a summary of my arguments. The BIA erred in the petitioner's case in a number of ways. First of all, the BIA The IJ explicitly found that the petitioner was persecuted on account of his imputed status as a gang member. Our argument is that the petitioner should be granted withholding of removal based on his status as an imputed gang member. However, the petitioner never brought that up before the IJ nor the BIA because there is case law that forecloses that argument. So we are asking the Ninth Circuit now to look at the case that forecloses the argument because that case is actually a perversion. The BIA based a decision on the Ninth Circuit and perverted a line of thinking so that the PSG would not be cognizable. Counsel, you're right, of course, that the board had said that in EAG. But then in MEVG, they said, you know, we don't read EAG as a blanket rejection of all scenarios involving gangs. And other circuits have criticized EAG as a misreading of our decision. Why? Why weren't those later developments enough to mean that the petitioner should have asked the board to reconsider EAG? Well, EAG was based off of policy reasons that somebody that is associated with violent activity, that that can't be an inherent quality that is needed for a particular social group. So just because I know that there's the case law that says that, you know, each particular social group is based on the facts. But the policy that's behind that doesn't change and it hasn't changed. So the IJ, the immigration judge in this case, still would have denied that particular social group based on the policy reasons. So it's not fact based because it's political or it's based on policy. And what about what significance does it have, if any, in your view that decisions in other circuits have criticized EAG? Is it still futile for him to challenge it or does that mean that maybe the board would have reconsidered it so he should have presented it to the board? Well, we are in the Ninth Circuit and the immigration judge in this case was, he was bound by both the BIA and Ninth Circuit case law. So what other circuit courts have little bearing, at least on this particular immigration judge? Okay, so you're saying that he shouldn't have given the board a chance to at least pass on that issue? I'm sorry, I don't understand the question. Well, you're saying that it would have been futile. Yes. But the board never got a chance. He never raised it. That's right. Well, so our argument is he didn't raise it because it would have been futile. And it is based on Ninth Circuit case law. So now that we're here at the Ninth Circuit, it is another opportunity, it is an opportunity for the Ninth Circuit to at least explain the scope of the case that EAG was based on. Okay, I'll move on to my next point. Thank you. Further, the BIA erred when it applied a clear error review standard to the nexus issue in this case. The BIA said that there was no clear error in the IJ's decision, that the persecution was not based on political opinion. There is Ninth Circuit precedent that establishes that nexus issues are analyzed under a de novo standard. Nevertheless, the BIA applied a clear error standard. I realize that the BIA used its own case law in that conclusion or in support of that conclusion. However, it directly conflicts with Ninth Circuit case law. And further, the BIA case law is predicated on another BIA case that just merely says that nexus issues involve facts, but it's not based on facts. So if anything, a nexus is a mixed issue of law and facts, which would still be analyzed under a de novo standard. Counsel, there's also case law from the Ninth Circuit that says that the substantial evidence review applies to the nexus issue. So are you saying that this is a situation where the Ninth Circuit needs to sit on bonk and resolve an internal conflict that we've created? Or I guess I'm not quite understanding your argument. Yeah, I realize that the government did in its opposition also cite those substantial evidence citations. Those cases were decided after the BIA case. I'm sorry, I'd have to look up the name. NM, I believe, that the BIA used to justify its reasoning. But the case law going back to about 85 or 89 started with a de novo analysis for nexus issues. So you're right. There does seem to be some discord within the circuit about what is the appropriate standard here. But the only published Ninth Circuit case that I have found on point says that it's a de novo standard. Even though it's mixed law, in fact? Yes, there's case law that supports that issues of mixed law, in fact, are analyzed under a de novo standard. Okay, so the third point that the BIA, the third error that the BIA made was that the petitioner, the BIA adopted the IJ's position that he did, that the petitioner did not provide any proof that he was persecuted based on his political opinion. That is clear error. In fact, there is a lot of evidence that the petitioner was persecuted based on his political opinion. He was campaigning for his uncle who was running for mayor and he was active in the campaign. There were times where he was harmed while he was in his campaign activity or around the locations of his campaign activity. Further, the abuse by the Salvadoran police increased substantially after it was made aware to the opposing political candidate that the petitioner was associated with his uncle who was campaigning for the mayor. Is there evidence in the record that he was targeted because of his tattoos? Yes, there is also. Okay. But it would be our position that there are multiple motives why the police abused the petitioner in this case. And the circumstantial evidence certainly points to a political opinion basis as well in addition to an imputed gang membership, particular social group. You've got just over a minute. I don't know if you wanted to reserve time for rebuttal. Yes, I'll reserve 90 seconds. I can quickly wrap up the last points. Well, you're under 90 seconds already, but you can wrap up. Oh, okay. And further, there were clear issues with the placing of the burden for internal relocation and the denial of the application of the convention against torture was not supported by substantial evidence. Thank you, Your Honor. Thank you. Good morning, Your Honor. May it please the court, Nehal Kamani for the respondent. The issue here is whether the record compels a conclusion contrary to the board's determination that petitioner did not meet his burden of proof for withholding of removal or cap protection. Because the record does not compel a contrary conclusion, this court should deny this petition for review. First, let's begin with his application for withholding of removal. Counsel, I'd like to direct you actually to a specific issue. Would you talk about who has the burden on the relocation issue? Isn't that the government's burden? With respect to cap protection? Correct. Yes. With respect to cap protection, there is no burden shifting that you find in asylum or withholding of removal. In asylum or withholding of removal, when an applicant establishes past persecution on account of a protected ground, the burden shifts to DHS to show that the alien doesn't have a well-founded, clear probability of future persecution. In contrast, with cap protection, there is no burden shifting. Relocation is one of several factors that the agency takes into consideration when determining whether or not there's a clear probability of future torture. Here, the immigration judge considered not only relocation, but also considered country conditions evidence, considered a petitioner's fluency in Spanish, as well as his ability to find gainful employment. All those factors were considered in finding whether or not he was more likely than not to be tortured if returned to El Salvador. There was no burden shifting. Can I stop you again? Is there a Ninth Circuit case that specifically says that the burden shifting that applies in other contexts does not apply in the cap context? Yes. I'm sorry. I can't name it from the top of my head, but I believe we do address it in our brief. It's clearly established by both statute and case law that the burden shifting does happen in asylum and withholding of removal, but the burden shifting does not happen in cap protection. That's in your brief? Yes. I can look for the specific page. Maldonado talks about it, and on page 41 of the respondent's brief, we talk about how the regulation does not place the burden on the applicant to demonstrate that relocation within the proposed country of removal is impossible, because the immigration judge must consider all relevant evidence. No one factor is determinative. Again, in the cap protection context, there is no burden shifting. And you're relying on the Maldonado case for that. Is that right? Yes. Page 41 of our brief. Should I go back to withholding of removal, or would the honors like me to address something else regarding cap protection at the moment? If no one else has a question on the cap, I'd like to ask you on the exhaustion issue. Yeah. I mean, it seems to me we have cases that have articulated the futility exception in somewhat different ways, but the most recent statement of it in, I think it was Szonyi, we said that exhaustion is excused if the agency's position appeared set based on a precedential decision. EHV was a precedential decision of the board. It appears to foreclose the claim that was made here. Why isn't that enough to satisfy the futility exception? So as explained in our brief, generally that sort of foreclosure and futility argument is used with legal issues. Particular social group, while there is legal principles of particularity, immutability, social distinction, it's the facts that have to be applied to those legal principles. And each case needs to be examined on a case-by-case basis. Both this court and the board have held that. And as Judge Miller pointed out, MATTER-MEVG specifically states that prior precedent should not be seen as a blanket rejection of all grant-related claims. Okay, can I ask you, can I stop you there and just, so, I mean, it was sort of a two-part question. MEVG said that, but it said that in context, it also, I think footnote 15 and 16 in MEVG seem to endorse the EAG rule about imputed gang membership claims. I read that as leaving open other kinds of claims. And EAG, although it is true that as a general matter, particular social group claims are fact-dependent, EAG appears to lay out a freestanding legal rule that imputed gang membership claims are just out altogether. So what is it in EAG that suggests that somebody with different facts would still be able to make an imputed gang membership claim? Well, I think Petitioner points out how her claim is different. She, in her brief, talks about how her case, or rather Petitioner's case, is distinguishable from Arteaga and EAG because in Arteaga, it was a former gang member. In EAG, it was someone who was perceived to be affiliated with gangs, whereas in this case, Petitioner was harmed because he was mistakenly believed to be a gang member. So in their brief itself, they distinguish Arteaga and EAG from the fact of the instant case. And those facts need to be presented at the agency level first so that they can be parsed out, examined in the first instance before they come to this court. You have the opportunity. I'd like to follow up on Judge Miller's question. I don't think he was asking you for why this case is different than EAG. I think the question was EAG seems to say that it doesn't matter what the facts are, you can't raise that issue. How does EAG leave it open? I don't read it that way. I don't read the board's subsequent precedent as well as this court's precedent as reading it that way. Because repeatedly, both the board and the court have stated that particular social groups need to be reviewed on a case-by-case basis. That just because similar groups have been rejected does not mean that it can be rejected in a new case. Does EAG say that? EAG conducts an analysis of a particular social group analysis for the facts that were presented before it at that time. It cannot have considered every single possible gang-related group that could be presented. That is impossible. But it didn't say anything, counsel, about the facts. The key part of the discussion there, it's not about particularity or visibility within Honduran society. It's just a legal conclusion that treating affiliation with a criminal organization as being in a social group would be inconsistent with the principles underlying the bars to asylum. So it had nothing to do with any factual analysis. In that case, it was a former gang member. That is not the case in all factual scenarios. And that is why this court and the board have repeatedly stated that it needs to be determined case-by-case. And MEVG, to the extent that EAG did not articulate that it has to be on a case-by-case basis, MEVG makes it clear that it does and that it should not be read as a blanket rejection. Petitioner had the opportunity before the immigration judge to exhaust this particular social group claim. When specifically asked, what is your particular social group, he articulated only one. And that related to the abuse he suffered as a child at the hands of his family members. No other groups were articulated. To say after the fact, based on the immigration judge's decision and the board's decision, that now they are seeking withholding of removal based on an imputed gang membership, when it was not presented before the agency, it is not properly before this court at this time. Thank you, counsel. Unless either of my colleagues has further questions, you are out of time. Thank you. Thank you, Your Honor. For the reasons articulated and set forth in our brief, we urge the court to deny this petition for review because the record does not compel a conclusion contrary to the agency's determination. Thank you, Your Honors. Thank you. Ms. Stratton. Oh, sorry. Your Honor, just to follow up on what counsel talked about, I know there was quite a discussion about the exhaustion issue. I would just ask Your Honors to keep the policy reasonings behind the cases in mind, and that's why... Let me interrupt you just for a second. Can you address the Maldonado case for us? For the internal relocation issue? Yeah. Did you agree with her analysis of Maldonado? Yes. I agree that there... I agree that there... When she repeated that there are various factors in a CAT analysis and that internal relocation is not... It cannot be the definitive or the dispositive factor in whether somebody is to be denied or granted CAT protection. But although the burden is on the petitioner to prove eligibility for CAT, nevertheless, the burden is not on petitioner to prove that he cannot internally relocate. It's a combination of all factors. Thank you. All right.  Thank you, Your Honors. We thank both counsel for their helpful arguments this morning, and the case just argued is submitted.
judges: Miller, Hunsaker, Rayes